UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                          :

STJEFAN LJUTOVIC,                            :

                            Plaintiff,       :

                                                       :       05 Civ. 9846 (GEL)

        -against-                            :

                                                       :       **OPINION AND ORDER**

530 EAST 86TH STREET, INC.              :
*c/o Wallack Management Co., Inc.*,       :

                            Defendant.      :

                                                       :
------------------------------------------------------------x

Stjefan Ljutovic, *pro se*, Plaintiff.

Judith A. Stoll, Kane Kessler, P.C., New York,
New York, for Defendant.

GERARD E. LYNCH, District Judge:

       Plaintiff pro se Stjefan Ljutovic brings this action against defendant 530 East 86th Street, Inc., alleging that defendant wrongfully and without cause terminated Ljutovic's employment as a doorman at defendant's building. Ljutovic filed his complaint in New York State Court in the Bronx on October 28, 2005. On November 21, 2005, defendant removed the action to this Court, and promptly moved to dismiss the action on December 5, 2005. For the reasons given below, defendant's motion will be granted.

## BACKGROUND

       The following facts are taken from the allegations in Ljutovic's complaint, which must be accepted as true for purposes of this motion to dismiss. Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994). On June 8, 2002, Ljutovic was hired to work as a doorman at defendant's building located at 530 East 86th Street in Manhattan. At the time

Ljutovic was hired, he was told by defendant's agents that his position was a full-time permanent position, and Ljutovic accepted the position based on that understanding. This understanding continued throughout Ljutovic's employment, and at no time during his employment was he ever told that his position was not full-time or not permanent. Specifically, Ljutovic was never told that his position was a temporary substitute position for another employee who was on vacation.

On November 5, 2002, Ljutovic was dismissed. He was told by one of defendant's agents that his dismissal was based on defendant's view that Ljutovic's position was a temporary vacation-relief position. During his five months of employment, Ljutovic was verbally informed of only two complaints regarding his job performance, neither of which was sufficiently serious to warrant his dismissal. Ljutovic never received any complaints in writing.

As a result of his dismissal, Ljutovic claims that he has suffered various mental and physical ailments, including post traumatic stress disorder, adjustment disorder with depressed mood, reactive depression, and sleep disorders. Ljutovic asserts that each of these conditions is the direct result of his wrongful termination.

## DISCUSSION

I. Jurisdiction

Ljutovic does not challenge the propriety of defendant's removal of the action to this Court. However, the Court has an independent obligation to ensure that jurisdiction exists and, on the face the complaint, Ljutovic does not assert a federal claim. Nor are the parties citizens of different states. However, because Ljutovic's state law claim is completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, this Court has subject matter jurisdiction under 28 U.S.C. § 1441(b) and § 1331.

In the usual case, subject matter jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). However, a district court is not deprived of jurisdiction when a plaintiff's complaint, while asserting no federal claim, is essentially based on federal law. Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005). Accordingly, a "federal court may construe [a] complaint as if it raised the federal claim that actually underlies the plaintiff's suit." Id. at 271-72.

One instance in which the Court has this power is when a plaintiff's state law claim is completely preempted by federal law. "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims . . . ." Id. at 272. Therefore, "[w]hen a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." Id.

Section 301 of the LMRA is one of the few statutes with the power of complete preemption. Id.; see also Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560-62 (1968). "Section 301 . . . governs actions by an employee against an employer for breach of a collective bargaining agreement." Dougherty v. Am. Tel. & Tel. Co., 902 F.2d 201, 203 (2d Cir. 1990). Even if a plaintiff formulates his complaint "as based on state tort law, that formulation is not binding upon [the Court] where rights and obligations under the pertinent collective agreement are inextricably involved in the underlying claim." Id. A plaintiff may, despite § 301 and the existence of a collective bargaining agreement, bring state law or other

3

federal law claims against his employer, but only if those claims are "truly independent" of the applicable collective bargaining agreement.  Id.  In other words, the only claims against an employer that are *not* preempted by § 301 are claims based on an alleged breach of a duty created by a law or relationship other than the collective bargaining agreement.  See United Steel Workers of Am. v. Rawson, 495 U.S. 362, 370-71 (1990).

In this matter, Ljutovic's claim against defendant is based on the Apartment Building Agreement between the Realty Advisory Board on Labor Relations Inc., an organization "acting on behalf of various owners of apartment buildings," and Local 32B-32J Service Employees International Union, acting "on behalf of its members and other building service employees . . . for whom it is the collective bargaining agency."  (Martin Aff. Ex. C [hereinafter "Agreement"].)  The Agreement itself purports to be a "collective bargaining agreement" (id. Art. I), defendant avers that it is a collective bargaining agreement (Martin Aff. ¶ 6), and Ljutovic does not claim otherwise.

In the complaint, Ljutovic alleges that he was hired as a full-time permanent employee pursuant to the Agreement (Compl. ¶ 3), that he was not a temporary employee under the Agreement (id. ¶ 9), that he was not a vacation-relief employee under the Agreement (id. ¶ 10), that he was not a probationary employee under the Agreement (id. ¶ 11), and that he paid union dues (id. ¶ 14).  Accordingly, the plain language of the complaint indicates that Ljutovic's claims are based on the Agreement.  Essentially, Ljutovic claims that under the terms of the Agreement he was a "full-time, permanent" (id. ¶ 3) employee, and that therefore his dismissal "without cause" (id. ¶ 18) after only five months was "wrongful" (id. ¶ 19).  The Supreme Court has held that a "suit against the employer . . . for wrongful discharge . . . is the kind of case Congress

provided for in § 301." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976).

Nor does Ljutovic assert any source other than the Agreement as the basis for his claim of wrongful termination. Under New York law, employment is terminable at will, and therefore, in the absence of a contractual arrangement stating otherwise, an employee can be dismissed or can choose to leave at any time for virtually any reason or no reason at all. Rooney v. Tyson, 91 N.Y.2d 685, 689 (1998). Of course, the law prohibits the termination of an employee for certain proscribed reasons, such as discrimination based on race or sex, or retaliation for protected employee activity. See, e.g., 42 U.S.C. § 2000e. However, neither Ljutovic's complaint nor his response to defendant's motion to dismiss alleges any facts even implying the existence of any unlawful motivation for his termination.

Therefore, the only possible basis for Ljutovic's claim is the Agreement. Accordingly, the claim is completely preempted by § 301, and the Court has subject matter jurisdiction over the action.

II. Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept "as true the facts alleged in the complaint," Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994), and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Thomas v. City of New York, 143 F.3d 31, 36 (2d Cir. 1998) (citations omitted). The question for the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks and citations omitted). All reasonable inferences are to be

drawn in the plaintiff's favor.  Shah v. Meeker, 435 F.3d 244, 248 (2d Cir. 2006).

While the plaintiff's allegations must provide the starting point for a Court's evaluation of a motion to dismiss, the Court may also consider documents attached to the complaint or incorporated by reference.  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).  Even if a plaintiff fails to attach a particular document, the Court may consider the outside document, without converting the motion to dismiss into a motion for summary judgment, if it is a document "upon which [plaintiff] solely relies and which is integral to the complaint."  Id., quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

On this motion, the Agreement, which has been provided by defendant, can and must be considered by the Court.  As discussed above, Ljutovic himself relies upon the Agreement in his complaint.  Moreover, due to § 301's complete preemption, the Agreement provides the sole basis for Ljutovic's claims, and is accordingly "integral" to his complaint.

Ljutovic's complaint must be dismissed, because under the Agreement, the sole remedy for his claim is arbitration.  The Agreement protects an employee from wrongful termination, providing that "[a]ny employee who is discharged shall be furnished with a statement of reason(s)" (Agreement Art. IV, cl. 3), and that "[i]f any employee . . . is unjustly discharged, he shall be reinstated" with an opportunity to "be compensated . . . for time lost" (id.).  However, the Agreement does not define what would make any particular discharge "unjust."  Rather, under the Agreement an arbitrator is given "the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement."  (Id. Art. VI, cl. 1.)  With respect to matters of interpretation, application, or

6

performance, recourse to the arbitrator is the "sole and exclusive method for the determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved." (Id. Art. VI, cl. 3.)

Ljutovic does not allege that his claim was brought to the arbitrator. If, in fact, Ljutovic's failed to arbitrate the dispute, that failure would be grounds for dismissal. As a general matter, employees are required to utilize the grievance procedures prescribed by the employer and the union in a collective bargaining agreement. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965); Johnson v. Gen. Motors, 641 F.2d 1075, 1085 (2d Cir. 1981) ("unless [an employee] attempted to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court would be dismissed."). However, it appears from the limited record before the Court that Ljutovic did previously proceed before the arbitrator.

Defendant avers that on "November 21, 2002, the Union submitted a grievance to the Office of the Contract Arbitrator, alleging that plaintiff had been unjustly discharged." (Martin. Aff. ¶ 18.) On December 19, 2003, the arbitrator issued his opinion, finding that Ljutovic was "not a permanent employee" and denying the grievance. (Martin Aff. Ex. D.) In his response to defendant's motion, Ljutovic agrees that there was an arbitration decision issued on December 19, 2003, in connection with his dispute. (Pl. Resp. ¶ 5.)

However, Ljutovic's apparent compliance with the Agreement's arbitration provision dooms his complaint for a different reason. The Agreement provides that arbitration is the "sole and exclusive method" for resolving disputes under the Agreement, and the arbitrator's decision

is "final and binding." (Agreement Art. VI, cl. 3.) Section 301 requires the Court to enforce the Agreement's choice of remedy for employee-employer disputes. Hines, 424 U.S. at 562. In so doing, "the means chosen by the parties for settlement of their differences under a collective bargaining agreement [must be] given full play." Id., quoting United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 566 (1960). "Courts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.'" Id., quoting United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 566 (1960). Therefore, once an arbitrator has resolved an employee's grievance, the Court cannot "undertake to review the merits of [the] arbitration award[] but should defer to the tribunal chosen by the parties finally to settle their disputes." Id. at 563.

Ljutovic's claim was heard by an arbitrator as required by the Agreement, and the arbitrator denied the claim. The Agreement states that the arbitrator's decision is final, and so the Court cannot rehear Ljutovic's claim or review the arbitrator's decision in this action. Accordingly, Ljutovic's complaint will be dismissed.

III. Ljutovic's Request to Amend the Complaint

Despite federal courts' obligation to defer to arbitration decisions rendered pursuant to a collective bargaining agreement, in certain limited circumstances a Court may look behind a final arbitration award. If an employee alleges that during the arbitration the union failed to adequately represent him, then the employee may bring a suit challenging the result of that arbitration. Carrion v. Enter. Ass'n, Metal Trade Branches Local Union 638, 227 F.3d 29, 33 (2d Cir. 2000). "Such suit, which alleges that the employer breached the [collective bargaining agreement] and that the union breached its duty of fair representation, is known as a hybrid §

8

301/fair representation claim." Id.  This hybrid claim may be brought against the employer, the union, or both.  Id.  However, regardless of the identity of the specific defendant, to succeed on a hybrid claim a plaintiff must successfully establish that the employer breached its agreement with the plaintiff and that the union breached its duty of representation.  Even in a suit against only one party, the plaintiff must prove the culpability of both.  Id. at 33-34.

Ljutovic's complaint, however, does not purport to assert a hybrid claim; it contains no allegations regarding any misconduct on the part of the union.  Defendant recognizes this defect, and correctly argues that without the assertion of a hybrid claim, Ljutovic's complaint must be dismissed because, for the reasons stated above, the claim is barred by the finality of the arbitration decision.  In his response, Ljutovic acknowledges his complaint's omission, but asserts that as a pro se litigant he was unaware both of the union's obligation to represent him fairly and of the requirement that he allege unfair representation in the complaint.  (Pl. Resp. ¶ 5.)  Newly aware of these legal matters, Ljutovic asserts the following in his response:

> I was not fairly represented by Local 32B-32J . . . during the course of the grievance procedure.  The Union, through its representatives, failed to submit on my behalf important evidence that I was a permanent employee.  Specifically, the Union failed to submit pay-stubs indicating that I was receiving a salary equal to that of a permanent employee . . . .  During the hearing, the Union representatives usually just sat there, and said almost nothing on my behalf.

(Id. ¶ 3.)  Ljutovic then requests leave to amend his complaint to include these allegations of unfair representation.  (Id. ¶ 4).

Generally, leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a).  However, if the requested amendment would be futile, and would not revive a complaint that would otherwise be dismissed, then the request to amend should be denied.

United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1254 (2d Cir. 1989).  Ljutovic's request to amend will be denied, because even if the proposed amendment were incorporated into the complaint, the complaint would still fail to state a claim upon which relief could be granted.

Defendant argues that Ljutovic's allegations regarding the union representatives' actions, or inaction, fail to rise to the level necessary to establish a breach of the union's duty of fair representation.  (Def. Reply 2-6.)  However, the Court need not reach that issue because, in any event, any hybrid claim asserted by Ljutovic would be barred by the statute of limitations.

The statute of limitations period for a hybrid § 301 claim is six months, "which begins to run when the employee knew or should have known of the breach of the duty of fair representation."  White v. White Rose Food, 128 F.3d 110, 114 (2d Cir. 1997); accord Carrion, 227 F.3d at 34; Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).  The fact that Ljutovic's claim is against his employer, and not the union, does not alter the limitations period.  Ljutovic's proposed amended claim is a hybrid action, and he "'cannot circumvent the six-month limitations period for hybrid actions by choosing to sue only his employer.'"  Carrion, 227 F.3d at 34, quoting McKee v. Transco Prods., Inc., 874 F.3d 83, 86 (2d Cir. 1989).

Based on Ljutovic's factual allegations, he knew or should have known of the union's alleged breach of its duty of fair representation no later than on or about December 19, 2003, the date of the arbitrator's decision.  With respect to Ljutovic's allegations that the union representatives failed to submit evidence to the arbitrator and failed to speak on his behalf at the hearings, Ljutovic was certainly aware of those facts during the proceedings themselves, which were scheduled to take place on April 25, May 15, August 26, September 15, and December 11,

2003.  (Martin Aff. Ex. D.)[1]  The statute of limitations did not begin to run during the hearings, however, because Ljutovic was not required to file suit in federal court before learning the outcome of the arbitration.  Ghartey, 869 F.2d at 163.  Rather, our Court of Appeals has instructed that the "better course is to permit the plaintiff claiming inadequate representation in an arbitration to wait until there has been some adverse outcome in the arbitration before seeking the intervention of a federal court."  Id.

This action was filed on October 28, 2005, almost two years after the final arbitrator's award was entered on December 19, 2003.  Regardless of whether the period began to run when Ljutovic witnessed the union's representation at the hearings, when the arbitration decision was entered, when Ljutovic first learned of the decision, or after expiration of the ninety-day period in which the union could have moved to vacate the decision, see Walton v. Marx, No. 93 Civ. 6770, 1994 WL 592705, at *4-*5 (S.D.N.Y. Oct. 28, 1994), the statute of limitations period has long since expired.  See Carrion, 227 F.3d at 34-35 (period began after employee learned that union would not enforce arbitration award); Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1492 (1995) (period began before entry of award when employee learned of union's refusal to represent him); Ghartey, 869 F.2d at 163 (period began when arbitration decision was entered); cf. id. at 165 n.2 (declining to decide whether period begins when decision is final or when employee learns of award).

---

[1] It is unclear from the record whether, and to what extent, hearings were conducted on each of the five days listed.  In any event, whenever the hearings occurred, and whatever they entailed, Ljutovic was certainly aware of the union representatives' conduct before the arbitrator issued his decision.

11

The Court does not pretend to assume that Ljutovic, a pro se litigant, was aware of the statute of limitations. However, statutes of limitations are not excused due to a plaintiff's pro se status. Mione v. McGrath, 435 F. Supp. 2d 266, 270 (S.D.N.Y. 2006). Nor does the record reveal any basis for tolling the limitations period. The sole potential basis for tolling that appears in the record is Ljutovic's allegation that the union "assured [him] that the decision of the arbiter was entirely independent of any lawsuit [he] might wish to bring on [his] own" (Pl. Resp. ¶ 4), which suggests a potential argument for tolling based on fraudulent concealment. Ultimately, however, the allegation does not satisfy the requirements of that doctrine.

Under the doctrine of fraudulent concealment, the running of a statute of limitations is tolled if the defendant conceals the existence of the plaintiff's cause of action.[2] New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988). Here, Ljutovic alleges that the union misled him regarding the relationship between the arbitration and the instant claim. However, while Ljutovic's allegation is troubling if true, the effect of the union's statement was not to conceal Ljutovic's cause of action, but rather to mislead him into thinking he had a cause of action when he did not. Ljutovic does not allege that the union, defendant, or anyone else represented to him that he would still have a viable cause of action two years after the arbitration, or that he need not be concerned with the possibility that his claim could become time-barred. Rather, even assuming Ljutovic's allegation to be true, he believed he had an action based on the arbitrator's denial of his grievance, and he did not file his action until almost two years after that decision was entered.

---

[2] The doctrine has additional requirements, none of which are relevant here.

Accordingly, the hybrid claim that Ljutovic seeks to assert in his requested amended complaint would be time-barred, and therefore his request to amend will be denied as futile.

## CONCLUSION

Defendant's motion to dismiss (Doc. #5) is granted. Plaintiff's request to amend the complaint is denied. The Clerk of the Court is respectfully directed to close defendant's motion (Doc. #5) and the case.

SO ORDERED.

Dated: New York, New York
       August 31, 2006

_____
GERARD E. LYNCH
United States District Judge